[Civ. No. 2769. Third Appellate District.—June 10, 1925.]

THE MELONE COMPANY (a Corporation), Respondent, v. EMIL ACQUISTAPACE et al., Appellants.

[1] LEASES—SURRENDER BY LESSEES—CONSENT OF LESSOR—ESTOPPEL —EVIDENCE.—In this action to recover the third semi-annual installment of rent under a written lease for a term of five years, although there was some evidence that prior to the expiration of the first year of the term of said lease plaintiff corporation had received a check from a third person as a deposit in connection with a lease of the premises for a period of three years commencing with the expiration of the first year of the former lease, it could not be said as a matter of law, from the evidence in the case, either that plaintiff corporation consented to the surrender of the premises by defendants or that it was estopped from disputing the alleged surrender.

[2] ID.—ATTEMPT TO SECURE NEW TENANT—ACCEPTANCE OF SURRENDER.—Merely attempting to secure a new tenant for premises previously leased but which have been vacated, without taking possession or in fact reletting, is not an acceptance of the surrender by the former tenants.

[3] ID.—REPUDIATION BY LESSEES—REMEDIES OF LESSOR.—Where a lease is repudiated by the lessee and the premises abandoned, the lessor has one of two courses, i. e., he may rest upon his contract and sue his tenant as each installment of rent, or the whole thereof, becomes due, or he may take possession of the premises and recover damages.

(1) 36 C. J., p. 448, n. 59.   (2) 35 C. J., p. 1093, n. 73.   (3) 35 C. J., p. 1089, n. 18; 36 C. J., p. 340, n. 5.

APPEAL from a judgment of the Superior Court of Napa County. Percy S. King, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. L. Webber for Appellants.

Henry C. Gesford for Respondent.

2.  Effort to relet as acceptance of surrender, note, 3 A. L. R. 1080. See, also, 15 Cal. Jur. 798.

3.  Landlord's remedies upon tenant's abandonment of premises, note, 14 Ann. Cas. 1088. See, also, 15 Cal. Jur. 796; 16 R. C. L. 969.

FINCH, P. J.—Plaintiff leased certain lands to defendants for a term of five years commencing on the first day of December, 1921, at a "rental for first two years of $2,000 per year and rental for the three years following $2,500 per year, payable semi-annually, every six months, in advance." Defendants went into possession under the lease and paid the first two installments of rent. They vacated the premises in August or September, 1922. This action was commenced for recovery of the third installment of rent. The plaintiff was given judgment and the defendants have appealed.

The complaint alleges the terms of the lease and is in the usual form of an action for the recovery of rent. The answer sets up a lease containing terms essentially different from those alleged in the complaint. The court found, from conflicting evidence, that the terms of the lease were as alleged in the complaint. Appellants do not contend that the evidence is insufficient to support this finding.

By the terms of the lease appellants were to plant twelve acres of the land to alfalfa and respondent was to furnish water for the irrigation thereof "at $5 an acre each irrigation." Appellants planted the alfalfa and commenced to irrigate the same. Respondent refused to permit them to continue the irrigation on the ground that "it was wrong to do it" before the seed was sprouted, "and at that time over half of the seed had not sprouted." Respondent notified them not to use the fruit upon a few trees growing in the alfalfa field. Appellants contend that respondent's foregoing acts gave appellants "the right to abandon the property when they were not receiving that which the lease gave them the right to receive." The lease provided: "Tenant to upkeep premises and run same to full satisfaction of owners." If it be conceded that the foregoing acts of respondent constituted a breach of the terms of the lease, neither such breach, nor any breach, was alleged in the answer, the defense set up therein being that the lease was canceled by mutual agreement.

[1] In appellants' brief it is said: "The appellants' position is this, that there was a surrender and a cancellation of the lease between the respondent and appellants and that the respondent on the 22nd day of September,

1922, recognized and consented to the surrendering of the premises by the appellants, such surrender to take effect on or before the 1st day of December, 1922." At the trial the defendants introduced in evidence the following writing, admittedly executed by the president of the plaintiff company:

"Sept. 22, 1922.

"Received from M. Luiz & Co. $100 Dollars, Deposit on 3 yr. lease Outside Pasture lands and Canyon Field $500.00 a yr fr Dec. 2/22, subject to land being vacant at that time.

"MELONE CO."

The lands described in the foregoing instrument are included, with other lands, in the lease in controversy here. M. S. Luiz testified that in September, 1922, "I talked with Mr. Melone in regard to a lease of some property of Mr. Melone's; and so we come to an agreement on the property; I gave him a deposit of $100, and he handed me a receipt for it; when I was going to take possession. So Mr. Melone told me, no the property isn't vacant, and it won't be vacant until some time in December. . . . In the first part of December. I told Mr. Melone I was hard up for pasture, but I would like to dispose of it. Mr. Melone told me he had some pasture, so I brought my cattle down; I got some stubble. He says I can use the stubble that time, so I brought my cattle right down and put them in the stubble field. Later on Mr. Melone said, 'See the Acquistapaces, if Mr. Acquistapace is willing to let you in possession, all right.' So I went to see Mr. Acquistapace and Mr. Acquistapace told me as far as they were concerned I can get right in there; 'I haven't got anything else to do, we are through.' So I came down and put my cattle on the property. . . . I was going to get that lease some time in December." The witness also testified that the amount of the deposit for which the receipt was given him was returned to him late in November or early in December, 1922. H. C. Melone, president of the plaintiff company, testified: "He (Luiz) offered me a check for $100 and insisted on my taking it, and I said, 'I can't take it, Luiz, because there is a lease on the place; I would like to rent it to you if the place becomes available.' So I turned the check over to my attorney, who advised me not to cash it. . . . A lease was all drawn up to be signed between ourselves, and I

never executed the lease. . . . Mr. Luiz never executed the lease, and this whole matter was put in abeyance subject to the prior claim of the Acquistapaces. . . . I told Mr. Luiz I could not execute a lease. . . . I referred Mr. Luiz to the Acquistapaces and told him he would have to deal with them. . . . The Melone Company leased to Mr. Luiz some stubble and hay land which was ours, and in no way connected with the Asquistapaces and their land.''

Emil Acquistapace testified that, prior to the time the defendants vacated the premises, he said to Melone, ''I give you back your ranch right away . . . because you promised to furnish all tools. . . . I cannot go ahead now if I don't get those things; if I have to buy everything I can't go ahead,'' and that Melone replied, ''Take your blankets and get out on the road if you feel like it,'' and that ''I went, I left the place, because I got mad''; that he never talked with Melone thereafter; that ''I told him I couldn't stay there; it was too much rent.'' Charles Acquistapace gave similar testimony. Melone denied the foregoing statement attributed to him and testified that the plaintiff did not agree to a cancellation of the lease or the vacation of the premises by the defendants, and that the plaintiff had not taken possession of the premises or leased any part thereof to others.

While the aforesaid receipt from plaintiff to M. Luiz & Co. tends to support appellants' contention that the plaintiff had accepted their surrender of the premises, it is not conclusive. The terms of the instrument are conditional, being expressly ''subject to land being vacated by that time,'' December 2, 1922. The defendants had left the premises prior to the time the receipt was executed. The terms of the instrument imply a recognition of their right to resume possession under their lease. No lease to Luiz, or M. Luiz & Company, was ever executed. Melone testified that plaintiff did not resume possession of the land or put Luiz in possession thereof. It cannot be said, as a matter of law from the foregoing evidence, either that the plaintiff consented to the surrender of the premises or that it is estopped from disputing the alleged surrender. In *Welcome* v. *Hess,* 90 Cal. 507, 512 [25 Am. St. Rep. 145, 27 Pac. 369], cited by appellants, it is said: ''A surrender is the yielding up of an estate for life or years to the rever-

sioner or remainderman.  Under the statute of frauds it
can be done only by express consent of the parties in writ-
ing, or by operation of law when the parties do something
which implies that both have consented.  These acts are
such as would estop the parties from disputing the fact of
surrender, and which would not be valid unless the term
were ended; as, for instance, a new lease accepted by the
tenant, or the resumption of possession by the landlord if
the tenant acquiesces, or the giving of a lease to another.
. . . And while it is said that a surrender by operation of
law is by acts which imply mutual consent, it is quite evi-
dent that such result is independent of the intention of the
parties that their acts shall have that effect.  It is by way
of estoppel. . . . The tenant, subject to the covenants of his
lease, is the owner of the term.  If he leaves the demised
premises vacant, and avows his intention not to be bound
by his lease, his title still continues, unless the landlord has
accepted the offer of surrender.''  **[2]**  ''Merely attempting
to secure a new tenant, without taking possession or in fact
reletting, is not an acceptance of the surrender.''  (15 Cal.
Jur. 798; *Chase* v. *Oehlke,* 43 Cal. App. 435 [185 Pac. 425].
**[3]**  ''Where a lease is repudiated and the premises aban-
doned, the landlord may pursue one of two courses: He may
rest upon his contract and sue his tenant as each installment
of rent, or the whole thereof, becomes due; or, he may take
possession of the premises and recover damages.''  (*Brad-
bury* v. *Higginson,* 162 Cal. 602, 604 [123 Pac. 797]; *Oliver*
v. *Loydon,* 163 Cal. 124, 126 [124 Pac. 731].)

The judgment is affirmed.

Thompson, J., *pro tem.,* and Plummer, J., concurred.